UNITED STATES of America,
Plaintiff–Appellee,

v.

Judith Emily BISSELL,
Defendant–Appellant.

No. 80–1030.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1980.

Decided Dec. 30, 1980.

---

Before KILKENNY and FLETCHER, Circuit Judges, and JAMESON, District Judge.*

KILKENNY, Circuit Judge:

Appellant was indicted, tried by a jury, and convicted on a two count indictment of a conspiracy to willfully and unlawfully injure the property of the United States in violation of 18 U.S.C. § 1361 and of willfully and knowingly possessing an unregistered destructive device in violation of 26 U.S.C. §§ 5861(d) and 5871.

Appellant filed many pretrial and post-trial motions concerning allegedly illegal electronic surveillance. Appellant sought the disclosure of allegedly illegally obtained wiretaps, hearing on electronic surveillance matters to determine issues of legality, standing and sufficiency of disclosure and a plenary taint hearing to determine if any or all of the government's evidence was inadmissible as the fruit of an illegal wiretap. After the post-trial hearing, the district court held that the evidence presented at the trial was not tainted by any illegal electronic surveillance and that any further disclosure would serve no purpose. Appellant contends that a remand is necessary so that constitutionally mandated procedures can be followed in resolving the wiretap issues.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant and her husband, both active members of the Students for a Democratic Society (SDS), on or about January 18, 1970, attempted to place a fire bomb under the steps of the Air Force ROTC building on the University of Washington campus. Their actions were observed by a guard of the University of Washington security police who had been stationed in the Air Force ROTC building. The guard radioed for assistance and appellant and her husband were quickly apprehended.

Kenneth R. Parker, U.S. Atty., Seattle, Wash., for plaintiff–appellee.

William J. Bender, Houghton, Cluck, Coughlin & Riley, Seattle, Wash., for defendant–appellant.

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

Initially the Bissells were charged with violating Washington state law in a Washington state court. They failed to appear for their 1970 state trial. Subsequently, on June 6, 1970, a federal grand jury returned the above–mentioned two count indictment. Appellant's husband has never been apprehended. Appellant was not arraigned in United States District Court until September 5, 1979. The reasons for the long delay are adequately explained and are not germane to the issues before us.

On September 26, 1979, appellant filed a pretrial motion seeking discovery, disclosure and inspection, as well as specified hearing procedures on electronic surveillance matters. Appellant had been an active member of the SDS. An allegedly illegal national security wiretap directed at the SDS had monitored the phones of the SDS National Headquarters in Chicago. Appellant had ongoing telephonic contact with the National Headquarters and she contends that the United States is obligated to disclose all illegally obtained conversations so as to make possible an adequate determination on the questions of the legality of the wiretap, appellant's standing, and the admissibility of evidence allegedly tainted by the illegal wiretap. Appellant's demand was grounded under F.R.Crim.P. 16 and 41, the Fourth, Fifth, and Sixth Amendments, *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), and 18 U.S.C. § 3504.

The government formally responded to appellant's motion on October 19, 1979. The government, in an earlier conversation with appellant's attorney, had been made aware that a § 3504 claim was likely to be made. In anticipation of this claim the government made a search regarding electronic surveillance relating to appellant. The government attorney directed that an inquiry be made of the appropriate federal agencies to determine whether appellant or her husband or any premises known to be owned, leased or licensed by them had been subject to electronic surveillance. This inquiry was directed to the following agencies: (1) The Federal Bureau of Investigation; (2) The United States Secret Service;

(3) The Drug Enforcement Administration; (4) The United States Custom Service; (5) The Bureau of Alcohol, Tobacco and Firearms; (6) The United States Postal Service; and (7) The Central Intelligence Agency. This extensive investigation turned up transcripts of three telephone conversations appellant had with people at the SDS National Headquarters in Chicago and these were disclosed to appellant. Appellant contended that the disclosure raised questions as to the adequacy of the records search and the disclosure process. Appellant maintained that several factors–the government did not search for records of conversations made at all the places at which she claims she had an expectation of privacy (these were set out in appellant's September 26, 1979 motion which postdated the government search), the conversations disclosed indicate the existence of other conversations, and appellant's affidavit that she had made at least twenty–five calls to the SDS Headquarters–all indicate that the government disclosure was inadequate.

The district court judge heard argument on electronic surveillance matters on November 21, 1979. The district court judge was exposed to the anticipated trial testimony. The judge asserted that he would be in a better position to evaluate any taint after trial and consequently refused to order discovery and disclosure before trial. On December 6, 1979, after a three day trial, appellant was convicted on both counts. A partial taint hearing was then held on December 26, 1979. Appellant objected to this procedure on the ground that a meaningful taint hearing could not be held until the government satisfied its disclosure obligations. The district court judge entered a tentative finding that the government had no advance knowledge of the events leading to the arrest of appellant.

On January 16, 1980, the district court judge denied appellant's motion to compel disclosure and for discovery and held that none of the evidence presented at trial had been tainted by illegal electronic surveillance. The court concluded that:

"All of the evidence introduced at trial flowed directly from the detection of the defendant by a guard of the University of Washington Security Police stationed on the night in question in the Air Force ROTC building. Uncontroverted evidence at the taint hearing indicated that ROTC buildings on the campus had been damaged earlier in the year and that threats against the facilities had been observed in pamphlets, posters, and the student newspaper. In addition, there had been numerous demonstrations in which threats of action against the ROTC buildings had been made. As a precautionary measure against the threatened damage, the University, for some three months prior to the incident in question, stationed guards nightly in all of the campus ROTC buildings.

\* \* \* \* \* \*

"Based upon oral testimony at the taint hearing and at the trial and upon circumstantial evidence, the Court finds that the government had no advance knowledge of the plans of the defendant.

"Even if it were assumed that the government had specific information about the planned bombing by the defendant, this Court is of the opinion that those individuals were not tainted who were eye witnesses of the events surrounding the attempted bombing.

"The detection and the apprehension of the defendant occurred by reason of events entirely independent of any planned bombing of the Air Force ROTC building. In consequence even though there may have been illegal interceptions of conversations to which defendant had standing to object, the Court finds that those intercepts were unrelated to the stationing of a guard at the Air Force ROTC building on the night in question. Any illegal governmental surveillance neither initiated nor intensified the protective measures at the Air Force ROTC building on the night in question." [Citations omitted].

## ISSUE

Whether the district court judge had some discretion as to the degree of disclosure or was he required to grant appellant's disclosure motion in full.

## DISCUSSION

Appellant contends that the district court judge ignored. a clear constitutional mandate in refusing to rule on essential electronic surveillance issues. Basing her claim primarily on *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), appellant argues that the district court judge's determination that the national security wiretap of the SDS was not arguably relevant to the trial evidence without ordering full disclosure of electronic data and without a meaningful adversary hearing was error. Appellant insists that a remand is necessary so that the appropriate procedures concerning electronic surveillance matters, *i. e.*, legality, standing and taint, can be conducted.

The district court judge specifically determined that "The security measures which the University took on the night in question were entirely unaffected by any wiretap information. The same security measures had been in effect for months. The uncontroverted evidence was that events on campus had made the University aware that it had grave security problems. It posted guards at all the ROTC buildings for some three months prior to the events in question. This posting was independent of any information illegally obtained from the defendant." The district court judge stated that "Based upon oral testimony at the taint hearing and at the trial and upon circumstantial evidence, the Court finds that the government had no advance knowledge of the plans of the defendant."

It is clear that appellant, on the one hand, and the government and the district court judge, on the other, disagree as to the proper role of a district court judge when faced with a request for disclosure of illegally obtained wiretap information. The resolution of this issue must, of course, begin with a discussion of *Alderman*. In *Alderman*,

the United States had engaged in electronic surveillance which might have violated the Fourth Amendment rights of petitioners and tainted their convictions. The Supreme Court first addressed the issue of standing and concluded that the suppression of the product of a Fourth Amendment violation could be successfully urged only by those whose rights were violated by the search itself. A Fourth Amendment violation would have occurred "if the United States unlawfully overheard conversations of a petitioner himself or conversations occurring on his premises, whether or not he was present or participated in those conversations." 394 U.S. at 176, 89 S.Ct. at 968.

The remaining portion of *Alderman* dealt with "the procedures to be followed by the District Court in resolving the ultimate issue which [would] be before it [on remand]–whether the evidence against any petitioner grew out of his illegally overheard conversations or conversations occurring on his premises." *Id.* at 180, 89 S.Ct. at 970. The Supreme Court concluded that

> ". . . surveillance records as to which any petitioner has standing to object should be turned over to him without being screened *in camera* by the trial judge. Admittedly, there may be much learned from an electronic surveillance which ultimately contributes nothing to probative evidence. But winnowing this material from those items which might have made a substantial contribution to the case against a petitioner is a task which should not be entrusted wholly to the court in the first instance. It might be otherwise if the trial judge had only to place the transcript or other record of the surveillance alongside the record evidence and compare the two for textual or substantive similarities. Even that assignment would be difficult enough for the trial judge to perform unaided. But a good deal more is involved. An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance

to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances. Unavoidably, this is a matter of judgment, but in our view the task is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court to identify those records which might have contributed to the Government's case." *Id.* at 182, 89 S.Ct. at 971. [Footnote omitted].

The illegally seized evidence is to be turned over to a defendant so that a meaningful adversary hearing can be held on the taint issue.

The disclosure obligation often may be extremely burdensome. The prospect of having to reveal vast amounts of sensitive information may induce the government to dismiss a prosecution. The Court made clear, however, that

> "None of this means that any defendant will have an unlimited license to rummage in the files of the Department of Justice. Armed with the specified records of overheard conversations and with the right to cross–examine the appropriate officials in regard to the connection between those records and the case made against him, a defendant may need or be entitled to nothing else. Whether this is the case or not must be left to the informed discretion, good sense, and fairness of the trial judge." *Id.* at 185, 89 S.Ct. at 972.

While the Court in *Alderman* emphasized the importance of full disclosure and adversary proceedings "Nothing in *Alderman v. United States, Ivanov v. United States,* or *Butenko v. United States* [394 U.S.], *ante,* p. 165 [89 S.Ct. 961, 22 L.Ed.2d 176], requires an adversary proceeding and full disclosure for resolution of every issue raised by an electronic surveillance." *Taglianetti v. United States,* 394 U.S. 316, 317, 89 S.Ct. 1099, 1100, 22 L.Ed.2d 302 (1969). In *Taglianetti,* the district court judge had examined all the records *in camera* to determine if the government had correctly identified

petitioner's voice and had turned over every conversation in which he had participated. In *Alderman* "in camera procedures ... would have been an inadequate means to safeguard a defendant's Fourth Amendment rights." *Id.* at 317, 89 S.Ct. at 1100. But in *Taglianetti*, the Supreme Court concluded that "Under the circumstances presented here, we cannot hold that 'the task is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court.' *Alderman v. United States, supra* [394 U.S.], at 182 [89 S.Ct. at 971]." *Id.* at 317–8, 89 S.Ct. at 1100–01.

The case law indicates that the district court judge does have a degree of discretion when faced with a request for disclosure of illegally obtained wiretap information. *See generally United States v. Buck*, 548 F.2d 871 (CA9 1977), *cert. denied* 434 U.S. 890, 98 S.Ct. 263, 54 L.Ed.2d 175. In *United States v. Sellers*, 315 F.Supp. 1022 (N.D.Ga.1970), for example, the district court stated that

> "The court recognizes that under *Alderman* a defendant has the right to examine records of unlawful surveillances without the court having first screened them for relevancy, but implicit in the *Alderman* rationale is a requirement that there be at least a remote possibility that the surveillances *could* have resulted in the use of tainted evidence to convict the defendant, *i. e.*, while the court is not permitted to examine the content of the surveillance records in order to separate relevant conversations from irrelevant ones, when it is manifestly impossible that the surveillance led to evidence bearing upon the criminal activity with which the defendant is charged it may be concluded as a matter of law that the surveillance could not have tainted the particular conviction no matter what the conversations contained." *Id.* at 1023.

■ The cases make it evident that when it is so clear that the evidence introduced at trial was obtained independently of any illegal wiretap, the court may decide to restrict the scope of disclosure or refuse to hold an adversary hearing. In *United States v. Vil-lano*, 529 F.2d 1046 (CA10 1976), *cert. denied* 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1193, the Tenth Circuit refused to order an *Alderman* hearing on the extent of any taint from electronic surveillance that had occurred seven years before the conduct in question. The court stated that

> "Evidence unlawfully obtained need not be suppressed if the causal connection between the unlawful Government conduct and the proof in question has 'become so attenuated as to dissipate the taint.' ... Agent Malone had previously testified he had no knowledge of any electronic surveillance of the defendants by federal agencies.... There was no showing of a connection or similarity between Villano's 1964 operations and the 1971 conduct under prosecution. We must agree the request for the hearing was properly denied." *Id.* at 1059. (Citations omitted).

In cases like *Sellers* and *Villano* the district court judge properly exercised a degree of discretion in not requiring the holding of an adversary hearing or compelling disclosure of possibly illegally obtained information. Appellant, while acknowledging that the district judge does have a degree of discretion, seeks to distinguish cases such as *Villano* and *Sellers on their facts*. While we do not believe that either *Villano* or *Sellers* are so close factually as to necessarily be dispositive of the instant case, the approach that they suggest—that the district judge has a degree of discretion—is helpful to a resolution of the issues before us.

■ Our search of the record convinces us that a remand would be inappropriate. The district court judge concluded that "Based upon oral testimony at the taint hearing and at the trial and upon circumstantial evidence, the Court finds that the government had no advance knowledge of the plans of the defendant." We agree. As the district court found, the allegedly illegal electronic surveillance was entirely unrelated to the stationing of the single campus security guard instrumental in the apprehension of the appellant. In light of

the district court judge's factual determination, we believe that there is no possibility that the evidence introduced at trial was tainted by any wiretap information.

Appellant contends that the government's disclosure was inadequate. We disagree. The disclosure made by the government after an exhaustive search, on the facts of this case, was adequate to safeguard the appellant's rights. The fact that one of the transcripts refers to an undisclosed conversation and that the appellant claimed she made at least twenty-five telephone calls to the SDS National Headquarters does not mean that any additional search is required. These contentions do not rise above a mere suspicion that there might be somewhere in the government's files a recording of appellant's voice which might in some manner have tainted the evidence introduced at trial. Certainly they do not warrant a remand on the facts of this case. The evidence before us overwhelmingly indicates that the government's case was entirely independent of any possible exploitation of any illegality. On this record we hold that the district court did not abuse its discretion in refusing to order additional disclosure and adversary hearings pursuant to appellant's overbroad motion. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and *Buck, supra*, at 874–5, fully support this rationale. *Alderman* is clearly distinguishable because there the government refused to disclose and insisted that the tapes be reviewed *in camera*. This was held to be insufficient to protect the defendant's Fourth Amendment rights. Here, the government disclosed all the tapes its search uncovered.

On these facts, we hold that the propriety of the district court judge's determination that any further inquiry into wiretap matters would serve no purpose is beyond question. To allow any further disclosure pursuant to appellant's entirely overbroad motion would simply be to authorize a rummaging in the files of the Department of Justice. On the facts of this case, any additional hearings would be superfluous. We are convinced that the procedures followed by the court below were adequate to satisfy the demands of the Fourth Amendment and of *Alderman* as well. The judgment of conviction must be affirmed.

IT IS SO ORDERED.